**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WINKEL MOTORS, INC., Respondent.**

No. 25904.

United States Court of Appeals, Ninth Circuit.

May 27, 1971.

William F. Wachter (argued), Daniel M. Katz, Attys., Marcel Mallet-Provost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel; Arnold Ordman, Gen. Counsel, NLRB, Washington, D. C., Roy O. Hoffman, Director, NLRB, San Francisco, Cal., for petitioner.

Jack I. McAuliffe (argued), of Streeter, Sala & McAuliffe, Reno, Nev., John D. Foote, Regional Office of Intl. Assn. of Machinists & Aerospace Workers, Burlingame, Cal., for respondent.

Before HAMLIN and DUNIWAY, Circuit Judges, and CURTIS, District Judge[*]

PER CURIAM:

The National Labor Relations Board applies to this court, pursuant to section 10(e) of the National Labor Relations Acts, *as amended*, 29 U.S.C. § 151 *et seq.*, seeking enforcement of its order dated September 25, 1969, against respondent, Winkel Motors, Inc. The order was entered after the Board found that respondent violated section 8(a)(1) and (3) of the Act.

Some of the facts surrounding the unfair labor practice in question may be summarized as follows: Homer Davis was employed by respondent as a heavy duty mechanic from January 19, 1968, until October 21, 1968, the date of his discharge. Respondent is engaged in the business of selling new and used automobiles and trucks at retail in Reno, Nevada, its principal place of business. Davis, whose duties consisted mainly of repairing and maintaining rear end assemblies, transmissions and automobile engines, was paid by the job on a "flat rate" or "piece rate" basis, with a guaranteed minimum of 31 hours each workweek at the prescribed hourly rate.

Davis became active in union organization activity in July, 1968; cooperating with the Machinists Union, he actively recruited the employees of respondent and other Reno automobile dealers. Acting through other employees of respondent, Davis collected fourteen signed union authorization cards which were, in turn, placed in the hands of union officials. He also actively participated in organizational meetings held during the period of the drive to gain union recognition. Respondent was aware of these organizational activities undertaken by Davis.

On Friday, October 18, 1968, Davis left work early as there was no work available for him that afternoon. Elvin L. Swim, the service department manager, gave his consent to the early departure and indicated that "he had a five-speed transmission coming in for Monday morning that he wanted (Davis) to overhaul." While Davis normally would receive his paycheck for the workweek, which ended on Thursday, on Friday, his failure to stay until normal closing hours precluded him from doing so.

On Monday, October 21, 1968, Davis reported for work as usual, but was told by Swim that he would "have to let (Davis) go" because he had "to cut down in personnel." Davis argued that there were several workers who had been employed less time than he, but Swim indicated that he had "been all through this Saturday and this is the way I have to do it." He received two paychecks, one for the previous workweek and one for the partial workday on Friday.

There was testimony which indicated that on Friday, October 18, or on Saturday, October 19, a letter dated October 17 was delivered to respondent, addressed to "Chet" (Chester) Winkel, corporate president, and was brought to the attention of Robert Winkel, secretary-treasurer of respondent. It announced that the Machinists Union represented a majority of respondent's service department employees, that it wished to prove its majority by independent audit of the signed authorization cards and meet on a stated date for the purpose of contract negotiations.

The trial examiner made detailed findings of fact of circumstances surrounding Davis' employment, his work record, his union organizational activities and the company's knowledge thereof, and of Davis' discharge; and con-

[*] Honorable Jesse W. Curtis, United States District Judge, Central District of California, sitting by designation.

cluded that the respondent discharged him because of his union organizational activity among its employees, which culminated in the union bargaining request contained in its letter of October 17.

With these findings of fact before it, the Board concluded that the respondent, in violation of sections 8(a) (1) and 8(a) (3) of the Act, interfered with, restrained, and coerced employees in the exercise of rights guaranteed them by section 7 of the Act; and that respondent discriminatorily discharged Homer Davis.

The only issue presented is whether there is substantial evidence in the record as a whole to support the Board's findings. Respondents largely based their attack on the trial examiner's credibility resolutions, arguing they are in error.

■■■ It is important to note that it is particularly within the purview of the Board to determine in cases such as this on conflicting evidence what the motivation for discharge was. United States Rubber Co. v. N.L.R.B., 384 F.2d 660, 663 (5th Cir. 1967). The findings must be upheld if supported by substantial evidence viewing the record as a whole, Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 487–488, 71 S.Ct. 456, 95 L. Ed. 456 (1951); and all inferences drawn by the Board should not be replaced by our own, if the record supplies a reasonable basis to support those drawn by the Board, N.L.R.B. v. United States Railway Equipment Co., 424 F.2d 86, 89 (7th Cir. 1970).

Respondent argues that the record shows that Davis was not discharged as a result of his engagement in union organizing activities but for his poor performance and a decline in demand for his work specialty. Assuming that there existed such a basis for discharge, "the existence of a justifiable ground for discharge will not prevent such discharge from being an unfair labor practice if partially motivated by the employee's protected activity; a business reason cannot be used as a pretext for a dis-

criminatory firing." N.L.R.B. v. Ayer Lar Sanitarium, 436 F.2d 45, 50 (9th Cir. 1970).

■■■ We feel that the findings were amply supported by substantial evidence viewing the record as a whole, and the inferences drawn by the hearing examiner were supported by a reasonable basis in the record. With respect to the credibility resolutions attacked by respondent, we believe they are likewise supportable and must stand, for they should not be disturbed unless "a clear preponderance of evidence convinces that they are incorrect." N.L.R.B. v. Luisi Truck Lines, 384 F.2d 842, 846 (9th Cir. 1967). Accord: Ayer Lar Sanitarium, *supra* at 49. We therefore affirm the Board's findings of a violation of sections 8(a) (1) and 8(a) (3) of the Act.

The Board's order is affirmed and a decree will issue enforcing it.