**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**VANGAS, INC., d/b/a Tahoe Vangas, Respondent.**

No. 74–2155.

United States Court of Appeals, Ninth Circuit.

May 27, 1975.

William R. Stewart (argued), John D. Burgoyne, David Miller and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., for petitioner.

William A. Quinlan (argued), of Doty, Quinlan, Kershaw & Fannuchi, Fresno, Cal., for respondent.

## OPINION

Before BROWNING and ELY, Circuit Judges, and ANDERSON,* District Judge.

J. BLAINE ANDERSON, District Judge:

Petitioner, National Labor Relations Board, seeks enforcement of an order issued against respondent finding it in violation of Section 8(a)(1) and Section 8(a)(3) and (1), 29 U.S.C. Secs. 158(a)(1) and (a)(3) and (1) of the National Labor Relations Act. The petition is filed pursuant to Section 10(e) of the National Labor Relations Act, as amended (29 U.S.C. Sec. 151 et seq.). The Board's decision and order are reported at 209 N.L.R.B. 145.

In brief, the Board found violations by the threatening of employees with discharge if they selected the Union[1] as their representative and by questioning employees concerning their Union activities. The Board found that two employees, Willis and Pegler, were discharged for their Union activities. Finding fur-

ther that valid authorization cards had been regularly executed by a majority of respondent's employees, but that the coercive activity precluded a fair election, the election was set aside and respondent was ordered to bargain with the Union. Respondent was also ordered to offer Willis and Pegler employment reinstatement and to make them financially whole.

█ The record fully supports the conclusion that respondent violated Section 8(a)(1). N.L.R.B. v. Walton Mfg. Co., 369 U.S. 404, 405, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); N.L.R.B. v. Ayer Lar Sanitarium, 436 F.2d 45, 46 (9th Cir., 1970). The Board properly ordered immediate bargaining with the Union. N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).

█ Likewise, the record substantiates the finding and conclusion that Willis and Pegler were discriminatorily discharged by reason of their Union activities in violation of Section 8(a)(3) and (1). This "motive" determination "is particularly within the purview of the Board." N.L.R.B. v. Winkel Motors, Inc., 443 F.2d 38, 40 (9th Cir., 1971). Requiring an offer of reinstatement with recompense for financial losses is within the Board's remedial powers. N.L.R.B. v. Hod Carriers & Construction Laborers' Union No. 300, AFL–CIO, 392 F.2d 581, 582 (9th Cir., 1968).

At oral argument in this case the panel requested additional briefing on the propriety of the Administrative Law Judge admitting into evidence an affidavit of one Youker, regional manager of respondent, to impeach his testimony as to the chronology of certain events bearing upon a resolution of the issue of the alleged discriminatory firing of Willis and Pegler. This chronology was obtained by Youker from his diary and expense records and used to refresh his memory. The affidavit had been given to a Board investigator and did in fact contain a

---

* The Honorable J. Blaine Anderson, United States District Judge for the District of Idaho, sitting by designation.

1. Chauffeurs, Teamsters & Helpers Local 150, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

number of substantial variances from his testimony.

Specific inquiry was made of Youker concerning alleged discrepancies and he was questioned by quoting from the affidavit and without objection. (TR. p. 684). Youker admitted giving the statement, knowledge of the general purpose of the meeting with the Board investigator at which it was given, and that he knew before the meeting that unfair labor practice charges had been filed against respondent. (TR. p. 684–685). Youker did in fact admit some discrepancies and did in fact offer an explanation or reasons for the inaccuracies in the affidavit. (TR. p. 685, 690–691). The affidavit was shown to Youker upon insistence of respondent's counsel (TR p. 687), and Youker referred to it and read from it on several occasions. (TR. p. 687–693). On re-direct respondent's counsel explored the reasons for the discrepancies and the circumstances under which the affidavit was obtained by the Board investigator. (TR. p. 697–698). The affidavit, General Counsel's Exh. # 13, was admitted over objection. (TR. p. 698).

■ Respondent urges a lack of foundation prerequisites: First, there must have been a testimonial assertion of a fact. Second, the witness must be shown the alleged contradicting document and asked if the statement was made. Third, if the witness admits making the statement, he must be afforded the opportunity of explanation. Finally, it is urged that *generally* the writing is not admissible if the witness admits the statement. Even the cursory review above indicates that there was substantial compliance with the three asserted prerequisites. Federal Rules of Evidence, Rule 613(b), and Advisory Committee Notes. The establishment of the existence of a prior written inconsistent statement and the other foundational elements then permits the introduction

into evidence of the extrinsic writing contrary to respondent's assertion. The authorities cited by respondent at pp. 3 and 4 of its Supplemental Brief support admissibility.

■ A reading of the reporter's transcript clearly indicates that the affidavit was used and received for impeachment purposes and to assist the Administrative Law Judge in "evaluating" the conflicting testimony as to important dates and conversations and their relation to the whole case. It was eminently proper for the trier of fact to receive Exhibit 13 for such purposes.

Respondent knew before the hearing of the discrepancies. In fact, Youker had prepared his own written memo for use at the hearing to refresh his memory as to the dates and conversations. He used this memo on several occasions. Respondent cannot now complain that it had no opportunity to prepare and present some records which would verify the information. No surprise or prejudice was suggested and no continuance was requested.

■ Respondent claims further that it was error to admit the affidavit because Youker was not specifically afforded an opportunity to admit, deny or explain *every* alleged discrepancy in the affidavit. We find no merit in this contention. Clearly, the *opportunity* was present. There were a number of conflicts in evidence from several witnesses concerning these crucial dates and the affidavits, being the best evidence of those prior inconsistent statements, would be of assistance to the trier of fact in evaluating the whole of the evidence. As stated before, factors affecting *total* unreliability of the affidavit were explored by respondent's counsel. If there was error in admitting Exh. # 13, it was harmless.

The order of the Board is affirmed and it will be enforced.