NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

PRINEVILLE STUD COMPANY, Respondent.

No. 77–1773.

United States Court of Appeals, Ninth Circuit.

June 23, 1978.

As Amended on Denial of Rehearing July 27, 1978.

Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., for N. L. R. B.

Lester V. Smith, Jr. (argued), of Bullard, Korshoj & Smith, Portland, Or., for Prineville Stud Co.

Before KILKENNY and CHOY, Circuit Judges, and EAST, District Judge.*

KILKENNY, Circuit Judge:

The National Labor Relations Board [Board] applies for enforcement of its order

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

against respondent entered under § 10(e) of the National Labor Relations Act [the Act]. Respondent was charged with violations of §§ 8(a)(1), (3) and (5) of the Act. A hearing was held before an Administrative Law Judge [ALJ] in May of 1976. The ALJ held that the respondent had violated provisions of the Act. That decision was upheld in January of 1977 by the Board.

## FACTS

The respondent is a lumber company consisting of two mills, the main one in Prineville, Oregon, and the one here in question in Burns, Oregon. Respondent was owned by Rhoden and Crawford and managed mainly from Prineville. Jones, under Rhoden's supervision, served as a general manager for the respondent's entire operation. Simmons was employed as the plant supervisor at Burns, and was assisted by Dickerson, the employee, whom the employees thought was their boss. However, Dickerson's status as a "manager" is an issue. The Burns mill produces eight-foot studs from what are classified as older "dead" trees. The plant employs approximately 17 men. On January 13, 1976, three employees met with a representative of the Lumber, Production and Industrial Workers Local 2902, United Brotherhood of Carpenters [the Union] to discuss unionization of the Burns mill. Each employee at the meeting signed a union authorization card. Another meeting for the remainder of the employees was scheduled for the following evening. At the conclusion of the second union organizational meeting, nine more employees either signed or had signed authorization cards. On January 15, 1976, the Union organizer sent a letter to the respondent in Prineville advising it that the Union represented a majority of the Burns mill employees and demanding that it recognize the Union and begin contract negotiations.

One day after the second Union meeting Simmons notified the employees that the Burns mill would be closed. The testimony is conflicting as to what the employees were told as to the reasons for the closure. The Burns plant had closed for a short period of time in 1975. On that occasion, the employees were warned in advance of this action. No such notice was given in 1976. The plant remained open all during the winter of 1974. The plant closed on January 16, 1976, and reopened on February 23, 1976.

## ISSUES ON APPEAL

Petitioner assigns three violations of the Act in seeking this enforcement order:

I. That the respondent violated § 8(a)(1) of the Act by questioning employees about their union activity.

II. That the respondent violated §§ 8(a)(1) and (3) of the Act by threatening to close and closing the Burns mill in an effort to defeat Union organization attempts.

III. That the respondent violated §§ 8(a)(5) and (1) of the Act by refusing to recognize and bargain with the Union.

## SECTION 8(a)(1) VIOLATIONS

Interrogation about union activity is clearly a violation of § 8(a)(1). *Free-Flow Packaging Corp. v. NLRB,* 566 F.2d 1124, 1131 (CA9 1978); *NLRB v. Squire Shops, Inc.,* 559 F.2d 486, 487 (CA9 1977). Unfortunately, this is a very difficult case for our review since the issues rest fundamentally on the credibility of various witnesses. This circuit has repeatedly held that credibility findings of an ALJ will not be overturned unless a clear preponderance of the evidence shows them incorrect. *NLRB v. Western Clinical Laboratory, Inc.,* 571 F.2d 457, 459 (CA9 1978); *NLRB v. R. O. Pyle Roofing Co.,* 560 F.2d 1370, 1371–72 (CA9 1977); *United Ass'n of Journeymen v. NLRB,* 553 F.2d 1202, 1205 (CA9 1977). Our review of the record supports the ALJ's finding that the interrogations did occur. Several different employees testified that Simmons had questioned them about their union activity. All of these instances were in addition to the threats that the mill would be closed.

## CLOSURE OF THE MILL

The mill was closed on January 16, 1976, but the reasons for the shutdown are disputed. Respondent and petitioner also disagree on whether or not the respondent threatened to close the plant in an effort to subvert union organization efforts.

■ We hold that the record supports the ALJ's finding that the respondent violated § 8(a)(1) by threatening to close the plant. The ALJ had the benefit of observing the witnesses and chose to accept the testimony that both Simmons and Dickerson had threatened plant closure. A threat to close down a plant unless union activity ceases is a violation of § 8(a)(1). *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 587–89, 618–20, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); *NLRB v. Triumph Curing Center,* 571 F.2d 462, 469 (CA9 1978); *Hertzka & Knowles v. NLRB,* 503 F.2d 625, 628 (CA9 1974), *cert. denied* 423 U.S. 875, 96 S.Ct. 144, 46 L.Ed.2d 106 (1975).

The reasons behind the plant shutdown present a more difficult factual question. Respondent contends that the plant was closed for three primary reasons: poor weather conditions in the Burns area, profit and loss figures for December, 1975, and a U. S. Forest Service reclassification of "dead" trees which would have substantially raised respondent's cost of raw materials. Secondarily, respondent argues that neither Rhoden nor Jones made any statements suggesting a plant closure or even knew of the union activity at Burns. Inasmuch as they were the only people with the authority to close the plant, respondent contends that any statements made by Simmons or Dickerson were unauthorized and not actionable.

■ The record belies respondent's secondary arguments. It is almost inconceivable that the plant owner and its manager would be totally unaware of Union activity at the Burns mill. In fact, Simmons testified that Jones asked him if he new anything about union organization efforts at Burns well before the shutdown. It is easy to conclude that Jones, as a general manager, wanted notification of any union activity at Burns, and Simmons, as a foreman, was duty bound to report this information. This also explains why Simmons questioned employees about their union activity; he was merely following the orders of his superior. Of course, most of the testimony supporting this finding is based on circumstantial evidence. It is well settled that circumstantial evidence is just as reliable as direct evidence. *NLRB v. Wal-Mart Stores, Inc.,* 488 F.2d 114, 116 (CA8 1973); *McGraw-Edison Co. v. NLRB,* 419 F.2d 67, 75–76 (CA8 1969).

■ As for Simmons' and Dickerson's comments being unauthorized, it is clear that Simmons was the foreman at the Burns plant, and his statements were those of a supervisor. The record also demonstrates that Dickerson had important responsibilities such as authorizing overtime, recommending job dismissal and processing work schedules; thus he should also be characterized as a supervisor. This court must also give deference to the Board's determination that Dickerson was a supervisor. *Kaiser Engineers v. NLRB,* 538 F.2d 1379, 1383–84 (CA9 1976).

We must now weigh the primary factors cited by the respondent for the closure: poor weather conditions, substantial financial losses and increased costs in raw materials due to the Forest Service reclassification. First, at least two months supply of raw materials were on hand at the time of the shutdown. This indicates that the closure was not anticipated, but rather hastily conceived and consummated upon notification of the Union's majority status. Second, the economic problems are at best inconclusive. The plant did cease operations for a time in 1975, but the employees were given warning. There was no shutdown in 1974. Rhoden admitted that the stud market actually rose during the time the plant was closed, and that the month that produced the poor profit figures was traditionally a slow one. Moreover, Jones told the ALJ that he had made no comparisons between previous Decembers and December, 1976, in deciding to close the plant.

This lack of basic business management techniques undermines the argument that the closure was a business decision.

Third, there is conflicting evidence about the weather. Rhoden admitted that he did not check the Burns weather and temperatures, but rather noted the temperature in Prineville and assumed that it was colder in Burns. Jones testified that he did not review with Rhoden the plant downtime due to weather in 1975 as compared with 1976, again evidencing unusual business management methods. Finally, the plant employees were never told that weather was part of the reason for the shutdown. While it is true that the Burns plant was not heated and that some pipes did freeze during January, 1976, the weight of the evidence supports the finding that the weather was not a major reason for the shutdown.

Fourth, the lumber grading question is also open to confusion. Once again there is evidence that the new grading standard was not mentioned to the employees at the time the plant was closed. Moreover, the respondent's own brief admits that the change in lumber classification was never implemented. Of course, respondent contends that it believed the change to be in effect, and thus, it was required to take immediate action to preserve its business. However, this position does not comport with respondent's two month inventory of logs.

 Although there is conflicting testimony as to each reason behind the shutdown, we must uphold the ALJ's findings on credibility. *NLRB v. Western Clinical Laboratory, Inc., supra* at 459. Moreover, this court has a very narrow standard of review in NLRB decisions. We must affirm any NLRB decision to the extent that it rests on findings of fact for which there is substantial evidence in the record. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Pacific Grinding Wheel, Inc.,* 572 F.2d 1343 (1978).

## DUTY TO RECOGNIZE AND BARGAIN WITH THE UNION

 There is no automatic duty to bargain when an employer is notified that a majority of employees within an appropriate unit have signed union authorization cards. *Linden Lumber Division v. NLRB,* 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974). However, respondent's unfair labor practice of closing the mill forfeits the respondent's rights to demand an election. *NLRB v. Gissel Packing Co., supra,* 395 U.S. at 600, 89 S.Ct. 1918. Thus, respondent violated §§ 8(a)(5) and (1) by refusing to recognize and bargain with the Union.

## BARGAINING ORDER

 We must also consider whether the violations of the Act were so pervasive as to make resolution of employer-employee problems through normal labor channels impossible. If so, then a bargaining order should be issued. In light of the severity and number of respondent's violations of the Act we hold that a bargaining order is appropriate. *NLRB v. Triumph Curing Center, supra,* at 474–78.

## CONCLUSION

The findings of the Board on each issue is supported by substantial evidence. The petition of the NLRB seeking enforcement of its order must be granted.

IT IS SO ORDERED.