**HAMBRE HOMBRE ENTERPRISES, INC., d/b/a Panchito's, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 77–1613.

United States Court of Appeals, Ninth Circuit.

July 12, 1978.

Rehearing Denied Sept. 5, 1978.

Ralph M. Segura, Walnut Creek, Cal., for petitioner.

Paul J. Spielberg (argued), Elliott Moore, Washington, D. C., for respondent.

Before SNEED and TANG, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

In this case we are to determine whether there is substantial evidence on the record as a whole to support enforcement of an order of the National Labor Relations Board ("Board") which directs petitioner, Hambre Hombre Enterprises, Inc., d/b/a Panchito's ("Company"), to reinstate, with back pay, Michael Hull, and to recognize and bargain upon request with the Bartend-

---

* Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

ers and Culinary Workers Union, Local 595 ("Union").[1] We find there is, and we enforce said order.

## I.

In December, 1974, the Union commenced organizing the Company's employees who worked at the restaurant and bar called Panchito's, that was operated by the Company in Walnut Creek, California. Twenty-seven of the Company's forty-four employees signed authorization cards and the Union, after filing a representation petition with the Board, made demand on the Company for recognition and invited all the employees who signed cards to a meeting on January 4, 1975. At that meeting, Michael Hull, a bartender at Panchito's, objected to the presence of a supervisor on the ground that her presence was intimidating. There was argument between them before the Union's president decided that the supervisor would be permitted to stay. Two days later the same supervisor interrupted a conversation at the bar between Hull and another bartender and told Hull to stop talking to the help about the Union. Hull stated that he was just telling the other employee what had happened at the meeting and that he had a right to do so. Several hours later the supervisor reported this conversation to Arthur G. Lopez, a co-owner of the Company, and Lopez fired Hull. The Union thereupon filed an unfair labor practice charge against the Company claiming that Hull and another employee had been discharged because of their union activities. On January 13, a preliminary hearing on the representation petition was held, at which time Lopez testified that his dismissal of Hull was a result, in part, of the conversation with the supervisor.

On January 18, the Union held another meeting for the employees who had signed the cards. The owners of the Company sat in a parked car across the street from the meeting place as the employees were arriving and for some time thereafter. The Union thereupon amended its unfair practice charge to include this surveillance.

The first representation election was held on February 26, 1975, and the Union was defeated eighteen to ten. It filed objections to the election and those charges were consolidated with the previously filed unfair labor practice charges.

At the consolidated hearing on July 23, 1975, Hull did not testify because he was in Europe, and neither the supervisory personnel nor the owners testified as to any reason for discharging Hull. However, the transcript of the January 13, 1975, hearing, containing Lopez' statement, was admitted into evidence without objection, and the parties stipulated that if those witnesses were called to testify their testimony would be essentially the same as that contained in the transcript.

The administrative law judge found that the Company had violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by surveillance of the Union meeting and that this unfair practice invalidated the election of February 26.[2] The administrative law judge also found that Hull and the other employee were not fired in retaliation for their union activities and that a bargaining order was not warranted. On review, the Board found that Hull was fired in retaliation for his union activities and ordered him reinstated with back pay. The Board also ordered a bargaining order.

## II.

To establish that Hull's discharge was an unfair labor practice, the Board must show that the discharge was illegally motivated. *NLRB v. Klaue*, 523 F.2d 410

---

1. This case is before the court on the petition of the Company to review and set aside the order of the Board, pursuant to Section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f). This court has jurisdiction over the proceedings under Sections 10(e) and 10(f) of the Act, the pertinent labor practices having

occurred in Walnut Creek, California, within this judicial circuit. The Board's order was issued February 10, 1977; the decision and order are reported at 228 N.L.R.B. No. 18 (Feb. 10, 1977).

2. The Company does not challenge this finding.

(9th Cir. 1975). The central question is what was the actual "motive" for his discharge? *Santa Fe Drilling Co. v. NLRB*, 416 F.2d 725, 729 (9th Cir. 1969). In determining this question, the Board is entitled to rely on circumstantial as well as direct evidence, and its inference of discriminatory motivation must stand where it is reasonable and supported by substantial evidence on the record considered as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ A finding of the Board that the actual motive for Hull's discharge was the Company's hostility to his union activities is amply supported on this record. It is uncontroverted that Hull initially incurred the Company's ire by objecting to the presence of the supervisor at the Union's January 4 meeting and arguing with her about its intimidating effect; that two days later the supervisor retaliated by interrupting a conversation between Hull and another bartender, ordering Hull to stop talking to help about the Union; and that when Hull said he was merely telling the bartender what had happened at the meeting, which he had a right to do under federal law,[3] he was then promptly fired.

■ The Company stresses that the record does not show that Lopez had any knowledge of Hull's union activity when Lopez made the decision to fire him. Even if Lopez' ignorance is assumed, the supervisor's knowledge of Hull's union activity, her hostility to the Union, and her role in the discharge may suffice. *Allegheny Pepsi-Cola Bottling Co. v. NLRB*, 312 F.2d 529, 531 (3d Cir. 1962); *NLRB v. Buddy*

*Schoellkopf Products, Inc.*, 410 F.2d 82, 85 (5th Cir. 1969).

■ The Company also contends that the statement of Lopez indicates that the conversation between Lopez and the supervisor only played a partial role in Hull's discharge. If the record contained further elaboration of reasons for Hull's discharge unrelated to protected union activity, there would be a question whether there is evidence of sufficient antiunion animus to overcome a business reason defense.[4] However, since the record is devoid of evidence supporting such a defense, this argument is not persuasive, and the Board's finding must prevail.[5] The Board's finding that Hull is entitled to back pay and reinstatement is also proper; Hull's absence from the country may diminish the amount of the award, but it does not detract from its propriety.

■ Finally, there is ample evidence on the record to support the Board's conclusion that the effect of the Company's unfair labor practices could not be dispelled by the Board's usual remedies, that a fair rerun election was unlikely, that the authorization cards provided a more reliable measure of the employees' desires than would a second election, and that a bargaining order would best carry out the policies of the Act.

The order of the Board will be ENFORCED.

---

3. An employee may discuss unionizing on working time, absent a lawful employer rule against it. *See Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *NLRB v. Heck's, Inc.*, 386 F.2d 317, 318–19 (4th Cir. 1967). The Company has made no attempt to show that it had in effect any such rule.

4. The rule in the Ninth Circuit, as most recently stated in *Western Exterminator Co. v. NLRB*, 565 F.2d 1114 (9th Cir. 1977), is that the improper motive must be shown to have been the dominant one. *But see, NLRB v. Central Press of California*, 527 F.2d 1156 (9th Cir. 1975); *NLRB v. Ayer Lar Sanitarium*, 436 F.2d 45 (9th

Cir. 1970). Furthermore, the circuits are sharply divided on the issue of the quantum of animus necessary for unlawful employee discharge, in violation of Section 8(a)(3), 29 U.S.C. § 158(a)(3). *See Western Exterminator Co. v. NLRB, supra*, 565 F.2d at 1118 n.3.

5. The Company contends that it was denied reasonable opportunity to present evidence and witnesses bearing on this defense at the hearing before the administrative law judge. Reviewing the record, we conclude that the Company did have this opportunity, and responsibility for failure to take advantage of it lies with the Company.