# NATIONAL LABOR RELATIONS BOARD, Petitioner,

### v.

# ULTRA–SONIC DE–BURRING, INC., OF TEXAS, Respondent.

### No. 78–1418.

United States Court of Appeals, Ninth Circuit.

March 20, 1979.

---

Lynne E. Deitch, Atty. (argued), Washington, D. C., for petitioner.

Warren C. Ogden (argued), Bellevue, Wash., for respondent.

Before MERRILL and CHOY, Circuit Judges, and BONSAL,* District Judge.

PER CURIAM:

The Board seeks enforcement of its order directing Ultra-Sonic to bargain with the Communications Workers of America, Local 9455. The order was based on alleged violations by the company of § 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3), occurring during a period when union representation was being discussed by employees, with the prospect of an election under consideration. The company concedes, for the purposes of this proceeding, that it committed violations of the Act in the respects charged: discharging two employees because of union activities; threatening cessation of business operations if the union won the representation election; and creating the impression that the union activities of employees were under surveillance. The company contends, however, that there is insufficient evidence to support issuance of a bargaining order in that the evidence does not support the proposition that the violations were of such a character as to render it unlikely that a fair election could be held.

In *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Supreme Court discussed those instances in which a bargaining order may be justified. As the Board points out, *Gissel* did not hold that a bargaining order may issue only where there is a showing that the unfair labor practices actually undermined the union's strength. *Gissel* held that a bargaining order may also properly be issued where the employer's unfair labor practices have a *tendency* to undermine majority strength and impede the election process. 395 U.S. at 614, 89 S.Ct. 1918. *Gissel* and subsequent cases have focused upon the nature of the unfair labor practices to determine whether the possibility of having a fair election by the use of traditional remedies is slight. *Id.* at 614, 89 S.Ct. 1918; *NLRB v. Triumph Curing Center*, 571 F.2d 462, 476 (9th Cir. 1978). Consideration has been given to the number and severity of the unfair labor practices. *See NLRB v. Broadmoor Lumber Co.*, 578 F.2d 238, 242 (9th Cir. 1978). A determination by the Board that such conditions exist will not be upset where substantial evidence on the whole supports the Board's conclusion. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 436 (1951); *NLRB v. Pacific Grinding Wheel*, 572 F.2d 1343 (9th Cir. 1978).

The company contends that the record establishes that the union did not obtain a

---

* Honorable Dudley B. Bonsal, Senior United States District Judge of the Southern District of New York, sitting by designation.

card majority until after the violations had occurred, and that the majority status of the union resulted from a prounion reaction resulting from the violations charged. The company relies on *Arbie Mineral Feed Co. v. NLRB*, 438 F.2d 940 (8th Cir. 1971). In that case the union obtained a card majority following coercive interrogation by the employer and the illegal discharge of an employee because of union activities. The court held that the evidence affirmatively indicated that the unfair labor practices did not tend to undermine the union majority.

In the present case, before the union had obtained a card majority, Ultra-Sonic illegally threatened closure of the plant, coercively interrogated one employee regarding her union activities in the presence of another employee, and illegally discharged one employee who was acting as a union organizer. However, unlike the situation presented in *Arbie*, the company here committed serious unfair labor practices after the union had obtained a card majority. It illegally discharged the remaining union organizer and illegally interrogated two other employees. By themselves, these post-card majority unfair labor practices are of sufficient number and severity to justify a bargaining order. *See Hambre Hombre Enterprises, Inc. v. NLRB*, 581 F.2d 204 (9th Cir. 1978). We note that in our case the two principal union organizers were discharged in rapid succession. The illegal firing of the second, occurring after the card majority had been obtained, simultaneously eliminated the organizational activity of those already committed to the union while serving to warn others of the consequences should they come to the union's support.

The order of the Board will be enforced.