NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

FORT VANCOUVER PLYWOOD
COMPANY, Respondent.

FORT VANCOUVER PLYWOOD
COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 78–2214, 78–2288.

United States Court of Appeals,
Ninth Circuit.

Aug. 2, 1979.
Rehearing Denied Sept. 20, 1979.

George J. Tichy, II, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for Fort Vancouver Plywood Co.

Christine Peterson, N. L. R. B., Washington, D. C., for N. L. R. B; Elliott Moore, N. L. R. B., Washington, D. C., on brief.

Before HUFSTEDLER and GOODWIN, Circuit Judges and JAMESON *, District Judge.

GOODWIN, Circuit Judge:

The National Labor Relations Board (NLRB) petitions for enforcement of its order entered upon a finding that Fort Vancouver Plywood Company committed unfair labor practices. The Board ordered the company to cease certain practices, to bargain with the union, and to reinstate and compensate for lost earnings 72 former employees. Fort Vancouver Plywood cross-petitions to set the order aside.

## I. FACTS

Fort Vancouver Plywood Company is a worker-owned Washington corporation. Not all workers are shareholders, however. The company has often employed nonshareholders as fill-ins during periods of peak production or as replacements for vacationing shareholder-workers. The number of nonshareholders in the work force has varied from time to time. The Board contends that the number has ranged from 30 to 70, but concedes that it also has fallen to 2 or 3.

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

The company claims that the figure has occasionally dropped to zero.

For reasons not material here, the employment of nonshareholders has always been a matter of contention within the company's management. Three of the seven directors (also worker-shareholders) consistently advocated ending the employment of nonshareholders altogether. They could not convince any of the other directors to join with them until June 14, 1976. On that day, all 72 nonshareholders then employed were fired.

The dismissals came as Local Union No. 3–3 of the International Woodworkers of America was taking steps to organize the nonshareholder contingent. On June 9, the union had held an organizational meeting, at which it distributed authorization cards. By June 16, the union had acquired signed cards from a majority of nonshareholder employees, and then demanded recognition from the company. All 72 nonshareholders had been discharged two days earlier, however, and the company refused to recognize the union. The union then filed charges with the Board, which issued a complaint.

Following a lengthy hearing, the administrative law judge found that the company had violated three subsections of the National Labor Relations Act: section 8(a)(1),

by illegally coercing and interrogating employees; section 8(a)(3), by the firings; and section 8(a)(5), by refusing to bargain with the union. 29 U.S.C. § 158(a)(1), (3), (5). He ordered the company, *inter alia*, to bargain with the union and to reinstate the discharged employees with back pay. The Board affirmed the administrative law judge's findings, conclusions, and remedies.

## II. VIOLATIONS

We agree with the Board's conclusions that Fort Vancouver Plywood violated section 8 of the Act in several respects.

### A. *Section 8(a)(1).*

Section 8(a)(1) makes it unlawful for an employer "to interfere with, restrain, or coerce employees" in the exercise of their right to organize. On petition for enforcement, the Board's ruling that the company violated section 8(a)(1) will stand as long as there is substantial evidence to support it. 29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Lozano Enterprises v. NLRB*, 357 F.2d 500, 502 (9th Cir. 1966). There is more than sufficient evidence here to support the Board's finding that the company violated section 8(a)(1) by making coercive statements to its employees.[1]

---

1. Company officials questioned employees about their involvement with the union, threatened to close the plant if it went union, and told employees they were being laid off because of their pro-union sentiment. Interrogation of employees about union activities is inherently suspect; absent express assurances against reprisal, it is coercive under section 8(a)(1). *NLRB v. Super Toys, Inc.*, 458 F.2d 180, 182–83 (9th Cir. 1972). The company points to no such assurances here. Threats of plant closure are also coercive unless, unlike the case here, they are phrased as economic predictions based on objective facts beyond the employer's control. *Hertzka & Knowles v. NLRB*, 503 F.2d 625, 627–28 (9th Cir. 1974), *cert. denied*, 423 U.S. 875, 96 S.Ct. 144, 46 L.Ed.2d 106 (1975). *See also NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Informing employees that they are being discharged because of their support for a union is also a violation of section 8(a)(1). *NLRB v. L. B. Foster Co.*, 418 F.2d 1, 2–3 (9th Cir. 1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970).

The company contends that the offending statements were all capable of noncoercive interpretations. It is not for us, however, to weigh differing interpretations. The factfinder need only be reasonable in his inference that the company interfered with or coerced employees in the exercise of their rights. *See Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074, 1080–82 (9th Cir. 1977). There was nothing unreasonable about the inferences drawn by the administrative law judge and sustained by the Board.

Fort Vancouver Plywood also argues that some of the testimony against it (in several cases uncontroverted) was not credible. The administrative judge is in a better position than we are to determine who is believable. *NLRB v. Bell Manufacturing Division*, 483 F.2d 150, 151–52 (9th Cir. 1973). "The decision of the Board to resolve the conflicting testimony by crediting that of [one witness rather than another] is binding on this Court." *NLRB v. Deutsch Co.*, 445 F.2d 902, 905 (9th Cir. 1971), *cert. denied*, 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 454 (1972).

B. *Section 8(a)(3).*

 Under section 8(a)(3) of the Act, an employer may not discharge employees because of their union activities or sympathies. *NLRB v. Magnusen*, 523 F.2d 643, 645 (9th Cir. 1975). *See also NLRB v. Tesoro Petroleum Corp.*, 431 F.2d 95, 97 (9th Cir. 1970). Violation *vel non* of the subsection depends on the employer's motive for terminating employment; the task of determining that motive is " 'particularly within the purview of the Board.' " *NLRB v. Vangas, Inc.*, 517 F.2d 747, 748 (9th Cir. 1975), *quoting NLRB v. Winkel Motors, Inc.*, 443 F.2d 38, 40 (9th Cir. 1971). In determining motive, the Board may consider circumstantial and direct evidence, and its inferences will prevail if reasonable and supported by substantial evidence on the record as a whole. *NLRB v. Miller Redwood Co.*, 407 F.2d 1366, 1369 (9th Cir. 1969). *See also Santa Fe Drilling Co. v. NLRB*, 416 F.2d 725, 729–30 (9th Cir. 1969) (citing cases).

 After hearing testimony for and against the proposition that all 72 nonshareholders were fired for valid business reasons, the judge concluded that the mass discharge was motivated by management's anti-union sentiment. There was ample evidence that the company's directors were aware of the attempted unionization and that the threat precipitated the decision to fire all nonshareholders. The judge's conclusion that a desire to stop unionization outweighed other business purposes was reasonable and well-supported.

The company also argues that, even if illegally motivated, the firings were permissible under *Textile Workers Union v. Darlington Manufacturing Co.*, 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965). In *Darlington*, the Supreme Court held it is not a statutory violation for an employer to fire all its employees and close down its business even though its motive may be to thwart unionization. Fort Vancouver Plywood contends that it fired all its employees. Ac-

cording to the company, since the only workers it retained were shareholders, it retained no employees. The company therefore claims that the *Darlington* exception to section 8(a)(3) applies.

 We need not pass on cross-petitioner's attempt to draw a line between shareholder "workers" and nonshareholder "employees". It is clear that the Supreme Court meant its exception in *Darlington* to apply only to the complete liquidation of a business.[2] *See Great Chinese American Sewing Co. v. NLRB*, 578 F.2d 251, 255 (9th Cir. 1978). Anti-union firings that fall short of terminating business operations completely, such as the discharges here, violate section 8(a)(3). *See Textile Workers Union v. Darlington Manufacturing Co.*, 380 U.S. at 274–75, 85 S.Ct. 994.

C. *Section 8(a)(5).*

On June 16, 1976, having obtained authorization cards from a majority of nonshareholders, the union demanded recognition. The company refused to bargain with the union. It alleges that the union's majority was obtained only after the nonshareholders were fired, and that several cards were backdated to show union support before the firings. Two signers admitted backdating their cards, and the company urges that others did, too.

 Assuming arguendo that there was extensive backdating, the fact remains that a majority had signed cards for the union on or before June 16, the date that Fort Vancouver Plywood claims the backdated cards really were signed. Backdating does not negate the expression of desire for union representation. *Ultra-Sonic De-Burring, Inc.*, 233 NLRB No. 165 (1977), *enforced*, 593 F.2d 123 (9th Cir. 1979). When cards have been backdated, the proper course is to determine when they were signed and to count them as expressing union support as of that date. *See, e. g., Essex Wire Corp.*, 188 NLRB 397 (1971).

---

**2.** "We hold here only that when an employer closes his entire business, even if the liquidation is motivated by vindictiveness toward the union, such action is not an unfair labor prac-

tice." *Textile Workers Union v. Darlington Manufacturing Co.*, 380 U.S. 263, 273–74, 85 S.Ct. 994, 1001, 13 L.Ed.2d 827 (1965) (footnote omitted).

The administrative law judge here concluded that the union had majority support on June 16, two days after the firings. Even if there was considerable backdating, this would not affect the finding of majority support shortly *after* the illegal discharges.

That finding is sufficient to make out a violation of section 8(a)(5) even though some members of the pro-union majority may have been fired two days before it signed the cards. An employer may not thwart a pro-union movement by improperly discharging employees before they formally express their wishes.

For the same reason, the failure to reopen the hearings to receive newly discovered evidence relating to the backdating was not error. The administrative law judge has considerable discretion in the grant or denial of a motion to reopen. *NLRB v. Victor Otlans Roofing Co.*, 445 F.2d 299, 300 (9th Cir. 1971); *NLRB v. Seafarers Union*, 496 F.2d 1363, 1365 (5th Cir. 1974). It was hardly an abuse of discretion not to reopen here. As the Board noted in affirming the denial of the motion to reopen, "even if such evidence were to show that additional cards had been backdated, this fact alone would not vitiate the finding that the Union possessed valid authorization cards from a majority of unit employees on June 16 * * *."

### III. REMEDIES

#### A. *Bargaining order.*

Fort Vancouver Plywood maintains that even if it violated the Act, two of the Board's remedies were improper. It objects, first of all, to the bargaining order. The company contends that it is entitled to an election.

Our standard of review gives a broad presumption in favor of the remedy selected by the NLRB. *NLRB v. Longshoremen's and Warehousemen's Union*, 549 F.2d 1346, 1355 (9th Cir.), *cert. denied*, 434 U.S. 922, 98 S.Ct. 397, 54 L.Ed.2d 279 (1977).

Where the employer has been guilty of multiple unfair practices, a bargaining order is proper if such an order would be the only way to effectuate employees' union preferences. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). *See NLRB v. Prineville Stud Co.*, 578 F.2d 1292, 1296 (9th Cir. 1978). A determination that a bargaining order is needed to rectify the effect of past practices will not be upset if substantial evidence supports the Board's conclusion. *NLRB v. Ultra-Sonic De-Burring, Inc.*, 593 F.2d at 124 (citing cases).

As required by *NLRB v. Pacific Southwest Airlines*, 550 F.2d 1148, 1152 (9th Cir. 1977), the judge set out his reasons for ordering the company to bargain with the union and stated why the alternative of an election was unsatisfactory to protect employees' section 8 rights. Particularly in view of the repeated and drastic nature of the coercive behavior and discharges, the judge reasonably concluded that only a bargaining order would effectuate employees' expressed preference for the union.

#### B. *Reinstatement order and back-pay award.*

Finally, the company argues that the reinstatement order was improper. The Board ordered the company to restore all 72 nonshareholders to their jobs, or to "substantially equivalent jobs" if the old jobs no longer existed, and to make up employees' lost earnings. Fort Vancouver Plywood contends that eventually it would have "drastically reduced or eliminated" the nonshareholder work force, regardless of unionization. Therefore, the company concludes, the Board's order improperly gave the discharged employees more than they would have gotten without company violations of the Act. We agree that the reinstatement portion of the Board's order is unenforceable.

Under section 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c)[3],

---

**3.** 29 U.S.C. § 160(c) states in relevant part:

"* * * If upon the preponderance of the testimony taken the Board shall be of the

opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board

the Board's remedial powers include wide discretion to fashion and issue reinstatement and back-pay orders. *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 176, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). These orders are frequently enforced by this court to remedy discriminatory discharges (*e. g., NLRB v. Vangas, Inc.,* 517 F.2d at 748), especially when the employer has been guilty of a mass firing of all workers in a bargaining unit (*e. g., K. B. & J. Young's Super Markets, Inc. v. NLRB,* 377 F.2d 463, 465 (9th Cir. 1967)).

In exercising its discretion, however, the Board's task is to find a remedy that will "restore the economic status quo that would have obtained but for [the] wrongful discharge * * *". *Golden State Bottling Co. v. NLRB,* 414 U.S. at 188-89, 94 S.Ct. at 427. *See Southern Tours, Inc. v. NLRB,* 401 F.2d 629, 633 (5th Cir. 1968). Remedies that award employees more than they would have obtained but for the violations are punitive, not compensatory, and thus improper. *Packing House & Industrial Services, Inc. v. NLRB,* 590 F.2d 688, 697 (8th Cir. 1978) (en banc). Where the jobs affected by the illegal discharge would have been phased out anyway, regardless of the unfair labor practices, the Board must tailor its remedy to reflect the situation but for the violations. *Florsheim Shoe Store Co. v. NLRB,* 565 F.2d 1240, 1247 (2d Cir. 1977).

*Florsheim* is especially relevant here. The Board had determined that anti-union animus, and not valid business reasons, caused the company to discharge its part-time employees. The court of appeals upheld the finding of discriminatory discharge, but it refused to enforce the Board's reinstatement order. Although legitimate business purposes may not have actuated the firings, there was much evidence that the company would have gradually terminated its part-time staff anyway.

" * * * Florsheim was entitled to have the Board shape its order in a form that did not impose a duty to recreate for an indeterminate period jobs that would have been 'phased out' of existence over time whether or not there had been a dispute over unionization. * * * On the issues of remedy, * * * the existence and the validity of the economic policy and the effect its implementation would have have [*sic*] on the duration of part-time jobs and the number of jobs that would exist over time was important." 565 F.2d at 1247.

Because the Board had not considered how long the jobs would have lasted but for the unfair practices, the case was remanded for appropriate findings.

In the instant case, the Board admits that Fort Vancouver Plywood's usual contingent of nonshareholders was only a fraction of the number employed in June 1976. It concedes that three of the company's seven directors had long urged the company to do away with all nonshareholder employment. The NLRB agrees as well that many shareholder-workers not on the board of directors of the company also favored ending the use of outside workers altogether.

Under these circumstances, the Board had a duty to consider how many employees, if any, the company would have continued to employ but for the unfair labor practices, and for how long. The record indicates that neither the judge nor the Board in review gave any consideration to whether some or all of the temporary employees eventually would have lost their jobs for acceptable business reasons. Failure to inquire how many employees would have stayed on but for the section 8 violations makes the remedy punitive, and so unenforceable. *NLRB v. J. S. Alberici Construction Co.,* 591 F.2d 463, 470 n.8 (8th Cir. 1979).

shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter * * *."

The Board contends that the exact terms of the reinstatement order are properly left for subsequent determination, and do not affect the order's enforceability. It argues that this court should enforce the order and reserve for compliance proceedings consideration of how many employees would have remained on the job. But the Board's premise is incorrect. All 72 nonshareholders eventually might have lost their jobs, making a reinstatement order improper altogether. The Board also overlooks the fact that its order requires the reinstatement, not of some nonshareholders, but of exactly 72 discharged workers. The precision in the administrative law judge's opinion and in the Board's order makes it clear that no further proceedings were contemplated regarding the number of employees to be reinstated. *Compare NLRB v. J. S. Alberici Construction Co.,* 591 F.2d at 470.

Enforcement of an order so specific would deny the company an opportunity to show that fewer than 72 jobs would have been available regardless of its unfair practices. The reinstatement order therefore cannot stand. *M. S. P. Industries, Inc. v. NLRB,* 568 F.2d 166, 180 (10th Cir. 1977). On the other hand, the order for back pay is indefinite, properly leaving for compliance proceedings the exact determination of amounts owing. *Great Chinese American Sewing Co. v. NLRB,* 578 F.2d at 255–56 (citing cases). Back pay awards to wrongfully discharged employees are within the Board's discretion under 29 U.S.C. § 160(c), *supra,* and we enforce this portion of the Board's order.

### IV. CONCLUSION

We remand to the Board for reconsideration of the reinstatement part of its order in light of this opinion. Back pay will have to be computed after reinstatement numbers are determined. All other portions of the order are enforced.

The Board will prepare and submit an appropriate form of judgment.