710 F.2d 1418
 113 L.R.R.M. (BNA) 3768, 98 Lab.Cas. P 10,317
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 403, AFFILIATED
WITH the UNITED ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF the PLUMBING AND
PIPEFITTING INDUSTRY, AFL-CIO,
Respondent.
 No. 82-7394.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 9, 1983.
Decided July 22, 1983.
 
 Corinna L. Metcalf, Washington, D.C., for petitioner.
 Richard J. Davis, Davis, Frommer & Jesinger, Los Angeles, Cal., for respondent.
 On Application for Enforcement of an Order of the National Labor Relations Board.
 Before BROWNING, Chief Judge, and CHOY and FERGUSON, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 The National Labor Relations Board ("Board") applies to this court for enforcement of an order the Board issued against Plumbers and Pipefitters Local Union No. 403 ("Union" or "Local 403"). The Board issued the order after adopting the findings of an Administrative Law Judge ("ALJ") that the Union violated sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. Secs. 158(b)(1)(A) and 158(b)(2), by operating its exclusive hiring hall in a manner that discriminated against "travelers" from sister locals and by making coercive statements and threats designed to further its discriminatory referral system. The Union opposes enforcement of the order on the ground that it was denied due process of law through several actions of the ALJ. We grant enforcement of the order in full.
 
 I. Background
 
 2
 Pullman Power Products ("Employer") hired pipefitters and welders to work on the Diablo Canyon Nuclear Power Plant. The collective bargaining agreement between the Employer and Local 403 established Local 403 as the exclusive source of the Employer's welders and pipefitters. After unsuccessful negotiations to renew the collective bargaining agreement between the Employer and the Union, the Employer staged a lockout. Prior to the lockout, 26 travelers (members of locals other than Local 403), who had been referred by the Union, were employed on the Diablo Canyon site. However, during the labor dispute and after the lockout, the Union did much to discourage travelers from seeking work at Diablo Canyon. After the lockout was over, the Union informed management that it regarded the lockout as a "termination," requiring that restaffing be done through the Union's dispatch procedures and hiring hall. The Employer protested, insisting that the Union dispatch to the Diablo Canyon site the same employees who had worked there prior to the lockout.
 
 
 3
 However, the Union sent none of the 26 travelers back to the site for a period of over one month. Local 403 refused to dispatch to the site travelers whom the Employer requested by name. Travelers were told by the Union business manager and dispatcher that they would not be re-employed on the site until all members of Local 403 were employed. The Union gave travelers low priority for any assignment.
 
 
 4
 The Union business manager threatened a traveler who had filed charges against the Union with the Board that he would not receive another job assignment until he dropped the charges. Other members of the Union harassed and threatened the traveler in an attempt to pressure him into dropping the charges.
 
 
 5
 The ALJ found that these actions by the Union constituted violations of sections 8(b)(1)(A) and 8(b)(2) of the NLRA. The ALJ's recommended order required Local 403 to cease and desist from the unfair labor practices found and from any similar practices. The order also required the Union to keep records of its dispatch practices for periodic inspection by the Regional Director of the Board, to pay appropriate back-pay awards to the 26 travelers who were not immediately redispatched to the Diablo Canyon site after the lockout, and to give notice of the award in a specified manner. The order stated that the amount of the back-pay award to each traveler would be determined at a hearing during the compliance stage of the proceedings.
 
 
 6
 The Board affirmed the rulings, findings, and conclusions of the ALJ and adopted his recommended order with only slight modification. The Union appeals the decision of the Board on three grounds: (1) The Union did not receive the procedural safeguards afforded a defendant in a class-action suit under Fed.R.Civ.P. 23. (2) The ALJ erred in failing to "tailor" the remedy to the violations demonstrated by the evidence and in leaving determination of the entitlement of specific individuals to back-pay awards to the compliance stage. (3) The ALJ erred in considering evidence supporting the Board's "termination theory" when determining the appropriate remedy for the violations found. As we discuss in more detail below, we find no merit to any of these contentions.
 
 II. Applicability of Fed.R.Civ.P. 23
 
 7
 Because the order entered by the Board vindicates a wrong committed against a group of individuals, the Union argues that the suit brought by the Board is a class-action suit and that the Union, as defendant, should have been afforded the procedural protections of Fed.R.Civ.P. 23. The Supreme Court's holding in General Telephone Co. v. EEOC, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), gives us clear guidance in deciding this issue. In that case, the Supreme Court affirmed this court's holding (599 F.2d 322, 328-35 (9th Cir.1979)) that Rule 23 is not applicable to an enforcement action brought by the EEOC in its name and pursuant to statutory authority to prevent unlawful employment practices and, therefore, the EEOC may seek class-wide relief under Sec. 706(f)(1) of Title VII of the Civil Rights Act of 1964 without being certified as the class representative. 446 U.S. at 323, 334, 100 S.Ct. at 1702, 1708. While the holding of General Telephone is narrow, a footnote to the opinion indicates that its intended sweep is quite broad:
 
 
 8
 Petitioners characterize this action as a "class action"; the EEOC characterizes it as an action "affecting a class of individuals." We need not choose between these characterizations. The issue is whether an action, however it is styled, brought by a Government agency to enforce the federal law with whose enforcement the agency is charged is subject to the requirements of Rule 23.
 
 
 9
 Id. at 323 n. 5, 100 S.Ct. at 1703 n. 5.
 
 
 10
 The Board brought the present action under section 10 of the NLRA, 29 U.S.C. Sec. 160, which expressly authorizes the Board to bring an administrative action to "prevent any person from engaging in any unfair labor practice." The Supreme Court found in General Telephone that, because of a similar authorization for the EEOC to bring suits under Title VII, the authority of the EEOC to bring enforcement actions is "in no way dependent upon Rule 23, and the rule has no application to a Sec. 706 suit." 446 U.S. at 324, 100 S.Ct. at 1703. The same rationale applies to an action brought by the NLRB under section 10 of the NLRA, for the action is one to vindicate "[t]he public interest in effectuating the policies of federal labor laws;" it is not a civil proceeding brought by a group of individual claimants to vindicate the wrongs they have suffered. Vaca v. Sipes, 386 U.S. 171, 182 n. 8, 87 S.Ct. 903, 912 n. 8, 17 L.Ed.2d 842 (1967). The Fifth Circuit has already applied the rationale of General Telephone to enforcement actions brought by the Board under the Fair Labor Standards Act of 1938, 29 U.S.C. Sec. 201 et seq. Donovan v. University of Texas at El Paso, 643 F.2d 1201 (5th Cir.1981). We hold that the General Telephone rationale is equally applicable to enforcement actions brought by the Board under the NLRA. Therefore, the Board was not required to proceed in accordance with Rule 23 of the Federal Rules of Civil Procedure.
 
 
 11
 III. Compliance-Stage Determination of Entitlement to Award
 
 
 12
 The Union contends that it was error for the ALJ to order that the entitlement to back-pay awards of all 26 travelers displaced by the Union be determined at the compliance stage of the proceedings. According to the Union, a Board order should mandate remedies only for proven wrongs. Thus, the Union reasons, the ALJ acted incorrectly at the first-stage hearing in failing to consider the Union's evidence that at least five of the 26 travelers were not available for work on the Diablo Canyon site after the lockout, making them ineligible for back-pay awards.
 
 
 13
 The Union relies on NLRB v. Fort Vancouver Plywood Co., 604 F.2d 596 (9th Cir.1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980), where this court remanded the portion of an NLRB order requiring reinstatement of 72 workers who were victims of the employer's unfair practices, but enforced the part of the order requiring awards of back pay to those workers. That decision does not support the Union's argument. In Fort Vancouver, we noted that the Board's order required the reinstatement of exactly 72 discharged workers, leaving no possibility for the employer to litigate whether or not the workers would have been laid off in spite of the violations. In contrast, the Fort Vancouver court found that "the order for back pay is indefinite, properly leaving for compliance proceedings the exact determination of amounts owing." 604 F.2d at 603. In the present case, the order is similarly indefinite; it requires the Union to make the 26 individuals whole "for any loss of earnings and other benefits they may have suffered by reason of the discrimination against them." As in the part of the order we enforced in Fort Vancouver, the order in the present case leaves open the possibility that the amount of the award to some of the named individuals will be zero. Thus, the present order is more closely analogous to the portion of the Fort Vancouver order that was enforced than to the portion that was remanded.
 
 
 14
 In NLRB v. International Association of Bridge, Structural, and Ornamental Iron Workers, Local 433, 600 F.2d 770 (9th Cir.1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980), this court enforced a Board order calling for back-pay awards even when the identity of all the discriminatees was not known. In noting that the Courts of Appeals have often granted enforcement of orders that reserve the determination of complex factual issues to the compliance stage, we cited with approval several cases, including NLRB v. Globe Manufacturing Co., 580 F.2d 18 (1st Cir.1978), where the issue left for compliance proceedings was whether an employee would have been recalled for work had he been properly considered and whether he was physically able to return to work. 600 F.2d at 778.
 
 
 15
 We find that the Board acted in a proper manner in delaying until the compliance proceedings determination of the entitlement to, and the amount of, back-pay awards for all the possible victims of the unfair labor practices engaged in by the Union.
 
 
 16
 IV. Evidence Considered in Fashioning a Remedy
 
 
 17
 The Union argues that the ALJ considered inappropriate factors in designing the remedy included in the order. In his opinion, the ALJ stated that while he agreed with the termination theory proffered by the General Counsel of the Board--that the Union caused the lockout or termination of all employees as part of the plan to replace travelers with Local 403 members--he would not find a violation of the NLRA on the basis of that theory because the allegations of this wrongdoing were not included in the amended complaint filed by the Board. However, the ALJ did acknowledge in a footnote that he had considered evidence of the termination theory in determining the appropriate remedy for the violations found. The Union argues that the ALJ erred in considering evidence supporting the termination theory when determining the proper remedy for the violations found.
 
 
 18
 The Union's argument is without merit, for "in devising a remedy the Board is not confined to the record of a particular proceeding," but may draw on its cumulative experience and unique administrative competence. NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 348, 73 S.Ct. 287, 289, 97 L.Ed. 377 (1952). A fortiori, the ALJ and the Board acted properly in drawing on evidence that came to light during the hearing in this case--evidence the Union had adequate opportunity to rebut--even though that information could not form the basis of a violation. See Wine & Liquor Salesmen & Allied Workers Local Union # 195 v. NLRB, 452 F.2d 1312, 1320-21 (D.C.Cir.1971) (Bazelon, J., concurring in part and dissenting in part) (Board cannot find unfair labor practice on basis of evidence of acts occurring outside limitation period, but may consider such evidence in formulating remedy).
 
 V. Conclusion
 
 19
 The Board's Order is enforced in full.