646 F.2d 403
 107 L.R.R.M. (BNA) 2608, 91 Lab.Cas. P 12,779
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
International Alliance of Theatrical and Stage Employees,
Local 363, Intervenor,
v.
CIRCO RESORTS, INC., d/b/a Circus, Circus, Respondent.
 No. 79-7632.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 10, 1980.
Decided May 26, 1981.
Rehearing and Rehearing En Banc Denied Aug. 10, 1981.
 
 Catherine Garcia, Washington, D. C., for petitioner.
 Nathan R. Berke, Severson, Werson, Berke & Melchior, San Francisco, Cal., for respondent.
 Petition to Review a Decision of the National Labor Relations Board.
 Before MERRILL and SCHROEDER, Circuit Judges and EAST*, District Judge.
 SCHROEDER, Circuit Judge:
 
 
 1
 This is a petition by the NLRB to enforce its order following findings of unfair labor practices. The case arises out of alleged unfair labor practices which occurred during efforts to organize the stagehands of the Circus, Circus Hotel & Casino in Reno in the weeks immediately following the completion of construction of the facility and prior to its opening. The Board found that the employer was guilty of unfair labor practices in connection with interrogation of employees concerning union activities, wage increases, threats of reprisals, and the discharge of two employees who were union members. The Board ordered that the employer cease and desist from the practices and bargain with the union.
 
 
 2
 We are called upon to decide whether the record supports a finding of unfair labor practices, whether the union of stagehands was an appropriate unit, and whether the order was appropriate.
 
 
 3
 The first unfair labor practice finding is based upon the questioning by the entertainment department supervisor of three of the six stagehands about their union membership. After making the inquiry, the supervisor told one of the employees that it was premature to have a union, and that the company was afraid of "what was happening at MGM," where a union was organizing. On another occasion he told another employee, "We don't want a union in here. The union may come in here in a year or so, but we don't want it in now." While questioning of employees concerning union activities is not a per se violation of § 8(a)(1) (29 U.S.C. § 158(a)(1)), Clear Pine Mouldings, Inc. v. NLRB, 632 F.2d 721, 725 (9th Cir. 1980), the determination by the Board that interrogation has been coercive is entitled to be upheld so long as there is substantial evidence to support it. NLRB v. Ft. Vancouver Plywood Co., 604 F.2d 596 (9th Cir. 1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). We find that the Board's finding of an unfair labor practice is supported by the evidence.
 
 
 4
 The next unfair labor practice finding arose out of the firings of two stagehands who were active in obtaining other stagehands' signatures on union authorization cards. The employer contends that the firings were for economic reasons, but the administrative law judge credited testimony that the firings had been followed by statements that the two had been too obvious in their union activities and that more workers would not be employed until "this union thing was over." The conclusion that the company violated §§ 8(a)(1) & 8(a) (3) (29 U.S.C. §§ 158(a)(1) and (a)(3)) by the firings and the threat of reprisal by remaining understaffed are supported by the record. See NLRB v. Bighorn Beverage, 614 F.2d 1238, 1242-43 (9th Cir. 1980).
 
 
 5
 A closer question is presented by the finding that wage increases granted in late August were unfair labor practices. The increases were granted to two stagehands who discovered a disparity in wages and protested strongly. The immediate dilemma faced by the company was to choose between meeting the protests or risk losing employees at a time when they were badly needed. While wage increases granted prior to an election generally carry a presumption of illegal motive, the employer is entitled to justify the timing of the increase. NLRB v. Anchorage Times Pub. Co., 637 F.2d 1359 (9th Cir. 1981). In this case, given the unusual circumstances, the Board should have considered the justifications offered and should not have based a finding of unfair labor practices solely upon the timing of the increase. See Free-Flow Packaging Corp. v. NLRB, 566 F.2d 1124, 1130 (9th Cir. 1978); Paoli Chair Co., Inc., 213 N.L.R.B. 909 (1974). The order should be modified to delete the reference to wage increases.
 
 
 6
 The employer's contention that one of the discharged employees, Sorce, was a supervisor within the meaning of the Act, 29 U.S.C. § 152(11), is without merit. An employee who gives minor orders or directives is not necessarily a supervisor for purposes of the Act. Kaiser Engineers v. NLRB, 538 F.2d 1379, 1383-84 (9th Cir. 1976). There was no evidence, apart from a suggestion for a possible job candidate, that Sorce was engaged in supervisory activities.
 
 
 7
 Also without merit is the contention that the two discharged employees, Sorce and Bledsoe, were not bona fide employees. The authority relied on by the company relates to employees who are actually on the payroll of the union for organizing purposes. NLRB v. Elias Bros. Big Boy, Inc., 327 F.2d 421 (6th Cir. 1964). There is no suggestion that these employees were working for anyone other than this employer at the time of the discharge.
 
 
 8
 Although the unit approved by the Board was small, we cannot agree that the Board was required to include all of the manual employees of the hotel and casino complex in the same unit and that its choice of a unit of stagehands was arbitrary and capricious. See Pacific Southwest Airlines v. NLRB, 587 F.2d 1032, 1037 (9th Cir. 1978); Atlas Hotels, Inc. v. NLRB, 519 F.2d 1330, 1334 (9th Cir. 1975). "The critical determinant is whether the employees share a substantial community of interest sufficient to justify their mutual inclusion in a single bargaining unit." Pacific Southwest Airlines v. NLRB, supra at 1038. Here the administrative law judge found that the stagehands were an appropriate unit because they performed identical duties, they all had training or experience in that area, their work was confined to a particular part of the hotel, and they did not work with other maintenance workers. We cannot say that the Board's decision was arbitrary or capricious.
 
 
 9
 We turn finally to the appropriateness of the order. The company objects to the order as being overly broad and as improperly containing an order to bargain. The injunction against unfair labor practices other than the ones specifically found may be justified where there is a danger of their commission in the future because of the employer's past course of conduct. NLRB v. Express Publishing Co., 312 U.S. 426, 437, 61 S.Ct. 693, 700, 85 L.Ed. 930 (1941); Polynesian Cultural Center, Inc. v. NLRB, 582 F.2d 467, 476 (9th Cir. 1978). With respect to bargaining orders, the standards to be followed are those contained in NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), which held that a bargaining order may be warranted where unfair labor practices have tended to undermine union majority strength and would interfere with a fair election. See also Pay'N Save Corp. v. NLRB, 641 F.2d 697, 702-703 (9th Cir. 1981); NLRB v. Bighorn Beverage, 614 F.2d 1238, 1243 (9th Cir. 1980). Although this cannot be viewed as an extreme case clearly warranting an order to bargain as a matter of law, the union here had majority status and this cannot be viewed as a "minor case" within the standards laid down in Gissel. In addition, since a small bargaining unit is involved, the need for a bargaining order is greater. Pay'N Save Corp. v. NLRB, supra 641 F.2d at 703. The pattern of activity engaged in by the employer during a short period of time, which included discharges for union activity and the refusal to replace the discharged employees until after an election, indicates a concentrated effort to nip union organization in the bud. The Board's order was warranted.
 
 
 10
 Order enforced as modified.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation