E.I. du PONT de NEMOURS AND COMPANY, INC., Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner.

Nos. 82–7428, 82–7509.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1983.

Decided June 8, 1983.

Richard C. White, O'Melveny & Myers, Newport Beach, Cal., for petitioner/cross-respondent.

---

Christine Weiner, N.L.R.B., Washington, D.C., for the N.L.R.B.

Before DUNIWAY, SNEED, and FARRIS, Circuit Judges.

SNEED, Circuit Judge:

Petitioner E.I. du Pont de Nemours and Company seeks review of an order of the National Labor Relations Board requiring it to reinstate a discharged employee with backpay. The Board asks for enforcement of its order. Jurisdiction exists under 29 U.S.C. §§ 160(e)–160(f). We deny enforcement of the Board's order.

## I.

### FACTS

Henry Burke, the employee whose discharge produced this lawsuit, worked for nearly ten years at a nonunion facility owned by du Pont. Burke had been involved in a series of disputes with du Pont. This one began when he was recovering from a workplace accident and du Pont docked his pay for an unauthorized visit to his doctor. Burke thereupon refused to sign his time card and was suspended.

On the following day Burke's supervisor called him to work, read him an "interview record" of performance deficiencies, and asked him to sign an acknowledgment that he had been read its contents. Burke refused, as he had on previous occasions. The supervisor then called Burke's "second-level" supervisor, who produced a "Development Program" for Burke which listed conditions for his continued employment. Among these were adherence to medical appointment procedures, an increase in his disability performance to the department average, and issuance of monthly written reviews of his performance. Burke asked for copies of the interview record and the Development Program. When his request

was denied because of company policy, Burke said he would not sign either document unless a coemployee was present as a witness. Du Pont also denied this request and terminated Burke when he again refused to sign without a witness.

Burke filed a charge against du Pont with the Regional Director, alleging various unfair labor practices. The Regional Director issued a complaint claiming that du Pont had violated sections 7 and 8(a)(1) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 157, 158(a)(1), both in refusing to allow a coemployee to witness Burke's interview and in discharging him. The Administrative Law Judge found du Pont guilty of these charges and his decision was affirmed by the Board. Du Pont was ordered, *inter alia,* to cease and desist from its unfair labor practices and to reinstate Burke with backpay. This appeal ensued.

## II.

### BURKE'S FAILURE TO SHOW CONCERT

Several issues are raised on appeal, but we need address only one: whether Burke's request meets the "concerted activities" requirement for protection under section 7.[1] We hold that it does not.

Section 7 establishes an employee's right to "engage in ... concerted activities for the purpose of ... mutual aid or protection." Courts interpreting section 7 have usually been faced with individual activity for personal ends or collective activity for mutual aid or protection. As a result the typology of protected and unprotected activity that has emerged generally fails to distinguish the requirement of "concert" from that of activity for "mutual aid or protection." *See Pacific Electricord Co. v. NLRB,* 361 F.2d 310, 310 (9th Cir.1966) (test of whether activity was "engaged in with or on behalf of other employees, and not solely by and on behalf of the discharged employee himself"); *see also Royal Devel-*

1. The Board has also presented this question in the companion cases of *Materials Research Corp.,* 262 N.L.R.B. No. 122 (July 20, 1982), and

*E.I. du Pont de Nemours & Co. (Slaughter),* 262 N.L.R.B. No. 123 (July 20, 1982), *appeal docketed,* No. 82–3363 (3d Cir. Aug. 4, 1982).

*opment Co. v. NLRB,* 703 F.2d 363, 374 (9th Cir.1983) (not protected activity where employee acted "for himself and by himself"); Gorman & Finkin, *The Individual and the Requirement of "Concert" Under the National Labor Relations Act,* 130 U.Pa.L.Rev. 286, 329 (1981) (majority of circuits assume "two discrete categories of action, individual activity for self-interest and concerted activity for mutual interest").

██ The requirements are, however, distinct, and du Pont and the Board have properly addressed them as such. The requirement of "concert" denies protection to activity that, even if taken in pursuit of goals that would meet the test of "mutual aid or protection," is only the isolated conduct of a single employee. Section 7 by its express language protects collective, not individual, activity. This circuit has enforced a separate requirement of "concert" even when not expressly distinguishing it from the "mutual aid or protection" requirement.[2] Thus, in *NLRB v. Bighorn Beverage,* 614 F.2d 1238, 1242 (9th Cir.1980), we held that one employee's filing of a safety complaint about carbon monoxide fumes in the workplace was not concerted activity. The complaint certainly concerned a topic of mutual aid or protection; other employees had already complained to the employer about their reactions to the fumes.[3] The court nevertheless held that the filing of a complaint by an employee who acted alone was not an action in concert. *Id.* at 1242; *see also Ontario Knife Co. v. NLRB,* 637 F.2d 840, 845–46 (2d Cir.1980) (employee who alone walked off job after she and coemployee had protested work schedules unprotected because activity was for mutual aid and protection but was not concerted).

The impetus for this suit, and the basis for the Board's view that concertedness exists here, is found in *NLRB v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). In *Weingarten* the Supreme Court held that an employee's request for a union representative to be present at an interview the employee reasonably believes will result in disciplinary action is section 7 activity. The Court addressed section 7's "mutual aid or protection" requirement at some length, *see id.* at 260–64, 95 S.Ct. at 965–967, but it assumed without discussion that a request invoking union assistance is concerted activity, *see Ontario Knife Co.,* 637 F.2d at 844 (interpreting *Weingarten* ).

The Board argues that we should extend *Weingarten* to the nonunion setting even if there is no evidence of concert between the requesting employee and others. We decline to do so. The *Weingarten* Court assumed concertedness from the request for a union representative. This assumption is supported by the circumstances that the union had been organized through concerted activity and stood as a guarantee that concerted activity would follow the request for help. The employee's request partook of the concertedness inherent in union activity. It is undoubtedly true, as the *Weingarten* dissenters noted, that just as section 7 is not limited to unionized employees, so the holding in *Weingarten* cannot be so limited. 420 U.S. at 270 n. 1, 95 S.Ct. at 969 (Powell, J., joined by Stewart, J., dissenting). A request for a coemployee to step in for the union representative, *NLRB v. Illinois Bell Telephone Co.,* 674 F.2d 618, 621–22 (7th Cir.1982), or a request for a postelection but pre-certification representative, *Anchortank, Inc. v. NLRB,* 618 F.2d 1153 (5th Cir.1980), may meet the requirement of

**2.** Commentators have criticized the artificiality of a construction of § 7 that results "in statutory protection for an activity engaged in by two employees while the very same activity engaged in by one remains unprotected." Gorman & Finkin, *The Individual and the Requirement of "Concert" Under the National Labor Relations Act,* 130 U.Pa.L.Rev. 286, 329 (1981). This artificiality, however, is one decided upon by Congress when it drafted § 7. It is not

a choice that can be undone by the courts for policy reasons.

**3.** *Compare NLRB v. C & I Air Conditioning, Inc.,* 486 F.2d 977, 978 (9th Cir.1973) (employee's complaint over hazardous working conditions not for mutual aid or protection absent evidence that it was made "for the purpose of mutually aiding and protecting any employees other than himself").

concert. And a history of group activity or, possibly, indications of future group activity, may sometimes endow the request in a nonunion setting with *Weingarten* protection.

■ In each of these cases, however, the request of the single employee is not "concerted activity"; it is the backdrop of other group activity that transforms it into concerted action. In this case there is no evidence of any past activity involving Burke and other employees, and there is no indication that any other employee would respond to Burke's request. The possibility of concerted activity—that this might be incipient group activity—is wholly speculative. Even Burke, who asked for "no one specific, just anyone," had no clear plans for future activity. He conceded that he did not seek a coemployee's advice, but wanted someone around only to document du Pont's position if he were not given copies of his interview record and Development Program. He was at all times willing to waive his request for a witness if du Pont would give him these documents. His attempt to obtain a witness from the ranks of his fellow employees if du Pont refused is not the kind of activity that qualifies as "concerted activity." The Board's interpretation is inconsistent with the language of the NLRA and we reject it.

*See Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979).

■ We repeat that we do not foreclose the possibility that a request for a fellow employee may be found concerted in the nonunion setting. Section 7 applies to nonunion employees as well as union employees, *see NLRB v. Washington Aluminum Co.,* 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962), and unionization is not the only sure indicator of concertedness. There must, however, be a showing that the requesting employee acts as part of a group. We also do not embrace du Pont's view that a coemployee might not at times be as capable of providing assistance as a union representative, even if the coemployee does not have a statutory duty to help. Nor do we rest our opinion on the management prerogative arguments or the wholly speculative concerns under section 8(a)(2), 29 U.S.C. § 158(a)(2), found in both du Pont's brief and the amicus brief of the Chamber of Commerce. Finally, our holding does not in any way involve the "constructive concerted activity" doctrine, a doctrine rejected in this circuit after the appeals in this case were filed. *See Royal Development,* 703 F.2d at 373–74.[4]

4. The Board in *Interboro Contractors, Inc.,* 157 N.L.R.B. 1295 (1966), *enforced,* 388 F.2d 495 (2d Cir.1967), used the doctrine of "constructive·concerted activity" to supply concert where an employee acted to enforce part of a collective bargaining agreement. The *Interboro* doctrine has met a mixed reception in the circuits. *See* cases cited in *Royal Development,* 703 F.2d at 373. Even the Second Circuit, however, has rejected an expansion to attempts by individual employees to secure benefits not part of an employer-employee agreement. *See Ontario Knife,* 637 F.2d at 845. Unfortunately for the Board, in *Royal Development* we rejected the doctrine altogether. The Supreme Court has since granted certiorari in a case in which the Sixth Circuit reiterated its rejection of *Interboro* in the union setting. *City Disposal Sys., Inc. v. NLRB,* 683 F.2d 1005, 1007 (6th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1496, 75 L.Ed.2d 928 (1983).

The Board correctly avoided reliance on *Interboro,* but argued instead that we are bound to follow the test devised by the Third Circuit in *Mushroom Transp. Co. v. NLRB,* 330 F.2d 683 (3d Cir.1964). The Third Circuit interpreted § 7 to require, for one employee's remarks to another to be protected, that "it must appear at the very least that it was engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action in the interest of the employees." *Id.* at 685. The *Mushroom* test is not persuasive authority. First, it was not adopted, but instead distinguished, on the sole occasion it was cited by this circuit. *Signal Oil & Gas Co. v. NLRB,* 390 F.2d 338, 342–43 & n. 1 (9th Cir.1968). Second, the *Mushroom* test itself was designed for conversations involving a speaker and a listener, 330 F.2d at 685; it therefore left open the possibility that a more stringent test might be required when the employee's "speech" was not made in the presence of other employees. *Cf. NLRB v. Northern Metal Co.,* 440 F.2d 881, 884 (3d Cir. 1971) (subsequent Third Circuit case rejecting *Interboro* and admitting that *Mushroom* test was the "most expansive" and "stretches somewhat the normal meaning of [concerted activities]").

In conclusion, there is no concerted activity in this single employee's request for "any" coworker to witness his disciplinary proceeding. Because we hold that du Pont could lawfully deny Burke's request for a coemployee witness, it follows that the subsequent discharge of Burke was also lawful. And the Board's inability to establish a violation of section 7 eliminates the parallel section 8(a)(1) charge. Enforcement of the Board's order is denied.

DENIED.