**Lucia A. SAQUIN, Plaintiff,**

**v.**

**HALEY BROS., INC., Arnold Mensch, and Does 1 through 50, Defendants.**

**No. CV 86–7568 WJR.**

United States District Court, C.D. California.

Jan. 30, 1987.

Lucia A. Saquin, in pro per.

Michael A. Hood, Fred T. Ashley, Daniel F. Fears, Paul, Hastings, Janofsky & Walker, Costa Mesa, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER AFFIRMING REMAND OF THE ACTION TO STATE COURT

REA, District Judge.

This action was removed from state court on the theory that plaintiff Lucia A. Saquin's state law causes of action for wrongful termination, breach of implied covenant of good faith and fair dealing, and intentional infliction of emotional distress are preempted by section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157. The Court finds this theory incorrect and holds that the case was removed without jurisdiction.

## I. Background

According to the allegations of plaintiff's complaint, defendant Haley Bros., Inc. ("Haley") employed Ms. Saquin as a general accountant on a partly written and partly oral employment contract. In May 1986, Haley terminated Ms. Saquin after she had written a letter to Wayne Freeze, Haley's general manager, complaining about the abusive conduct of her supervisor, Lou Mahoney. Mr. Freeze had asked Ms. Saquin to draft the letter after she had complained to him about Ms. Mahoney. In the letter, Ms. Saquin indicated that Ms. Mahoney had abused other employees and that they were also upset with her. In her deposition, Ms. Saquin answered "yes" to the questions whether she had written the letter "on behalf of those employees who had complained" about Ms. Mahoney.

Mr. Freeze gave the letter to Arnold Mensch, Haley's vice-president and financial officer, for his review. According to plaintiff, Mr. Mensch read the letter and immediately confronted plaintiff and fired her. Mr. Mensch apparently had some preexisting animosity towards plaintiff arising out of a verbal disagreement between Ms. Mahoney and Ms. Saquin in which Mr. Mensch also became involved.

Plaintiff filed this action in state court, asserting state law wrongful termination and breach of implied covenant of good faith and fair dealing causes of action. Defendants removed the case on November 19, 1986, claiming that Ms. Saquin's state law claims are preempted by section 7 of the NLRA because her letter complaining about Ms. Mahoney was "concerted activit[y] for the purpose of ... mutual aid or protection" of Haley employees. NLRA § 7, 29 U.S.C. § 157.

On December 18, 1986, doubtful of its jurisdiction, the Court issued to defendants an order to show cause why the action should not be remanded. The Court ordered defendants to respond by January 8, 1987. On January 15, the Court still had not received a response and the Court ordered the case remanded. Upon receiving the order of remand, defendants informed the Court that they had filed a response on January 8, at 4:30 P.M., and they delivered a photocopy of their conformed copy, indicating that they had indeed filed a response. The reason, however, why the Court did not receive the defendants' response is that they mistakenly labelled it "CV 86–7856" whereas the actual filing number of this case is "CV 86–7568." The Clerk of the Court called defendants on January 9 to ask them the correct number of the case, indicating to them that CV 86–7856 was not their named case. Defendants neglected to call the Clerk back and their response thus remained lost in the Clerk's office.

Defendants' error aside, the Court has now received and reviewed their response and now addresses the remand issue on its merits.

## II. The Well-Pleaded Complaint and Artful Pleading Doctrines

Defendants seek to invoke this Court's removal jurisdiction pursuant to 28 U.S.C. § 1441(a) and (b), which provide for removal of civil actions "arising under the Constitution, law or treaties of the United States."

■ As noted, plaintiff's complaint alleges only state law claims for wrongful termination. Nevertheless, under the "well-pleaded complaint" doctrine, defendants may remove if "resolution of a federal question must play a significant role in the proceedings." *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928 (9th Cir.1986).

■ Under the "artful pleading doctrine," this Court must find that plaintiff's complaint actually states a federal question if "federal law provides both a superseding remedy replacing the state law cause of action *and* preempts that state law cause of action" that plaintiff wishes to assert. *Id.* at 932 (emphasis in the original).

The issue for the Court is therefore whether the NLRA both prevents plaintiff from recovering upon state law claims and provides plaintiff with an alternative remedy. If so, then defendants have a right to remove this "completely preempted" action. *Id.*

*III. Determining Preemption Under Federal Labor Law Requires a Flexible Consideration Of Competing Federal and State Interests*

■ As the United States Court of Appeals for the Ninth Circuit recently observed, "Because federal law does not cover every dispute that can arise out of an employment or union relationship, total preemption of [state law labor claims] is impossible." Determining when federal labor law preempts state law cannot be done mechanically. As the Ninth Circuit has further observed, "Essentially, in any preemption case the court must attempt to weigh the state's interests against those of federal labor policy." *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1473 (9th Cir.1984); *see New York Telephone Co. v. New York State Dept. of Labor*, 440 U.S. 519, 550, 99 S.Ct. 1328, 1346, 59 L.Ed.2d 553 (1979) (Blackmun, J., concurring) (in preemption analysis, "the crucial inquiry is whether the exercise of state authority 'frustrate[s] effective implementation of the [National Labor Relations] Act's processes' "); *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984) (in determining federal labor law preemption, "the essence of the exercise is a balance of state and federal interests").

The primary purpose of federal labor policy is to promote harmony between management and labor groups and to promote collective bargaining as a fair and efficient way for management and labor groups to agree on terms of employment:

> It is declared to be the policy of the United States to eliminate the causes of certain substantial obstruction to the free flow of commerce ... by encouraging the practice ... of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

National Labor Relations Act § 1, 29 U.S.C. § 151; *see E.I. du Pont de Nem-ours and Co. v. NLRB*, 707 F.2d 1076 (9th Cir.1983) (NLRA protects collective but not singular employee activity). To implement this policy, section 7 of the NLRA provides that "Employees shall have the right to self-organization ... to bargain collectively through representatives of their own choosing, and to engage in other protected concerted activities for ... mutual aid or protection." 29 U.S.C. § 157. Section 8 of the NLRA, 29 U.S.C. § 158, makes it an actionable unfair labor practice to interfere with the rights guaranteed by section 7.

In Ms. Saquin's case, section 7 policy is only remotely involved, if at all. Ms. Saquin was not terminated for attempting to promote collective bargaining nor did her termination violate a collective bargaining agreement. While the letter was written "on behalf of" other employees as well as herself, defendants have offered no evidence that Ms. Saquin was other than a self-appointed good Samaritan. This sort of gratuitous benevolence does not implicate the federal policy of promoting collective bargaining and other mutual aid by labor groups. *See E.I. du Pont de Nemours*, 707 F.2d 1076.

As for the interests of the state of California, the California Supreme Court has held that the state's common law protects "certain implied contract rights to job security, necessary to ensure social stability in our society." *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 455, 168 Cal.Rptr. 722 (1980). Ms. Saquin seeks to invoke this protection of California's common law, and this Court must defer to the California Supreme Court's evaluation of the importance of the state's interest in preventing wrongful terminations and breaches of implied covenants of good faith and fair dealing.

*IV. Administering the Balancing Test: While State Jurisdiction Must Yield if Activities are "Arguably" Protected by § 7 of the National Labor Relations Act, Defendants Must Present Evidence Establishing This*

In comparing federal and state interests, the United States Supreme Court requires

that greater weight be given to federal interests. The standard, recently re-affirmed, is that "when an activity is argu-ably subject to" regulation under the NLRA, the courts must hold state regula-tion preempted. *International Long-shoremen's Ass'n v. Davis,* — U.S. —, 106 S.Ct. 1904, 1915, 90 L.Ed.2d 389 (1986). Yet, "a party asserting preemption must put forth enough evidence to enable a court to conclude that the activity is arguably subject to the [National Labor Relations] Act." *Id.* 106 S.Ct. at 1916.

Under *Davis,* defendants must provide evidence establishing that Ms. Saquin's ac-tivities were "arguably" protected by fed-eral labor law, specifically section 7 of the NLRA.

A recent Ninth Circuit decision guides this Court in determining the scope of sec-tion 7's coverage. Under *E.I. du Pont de Nemours,* activity is not regulated or pro-tected by section 7 of the NLRA unless it is both "concerted activity" and for "mutual aid or protection."[1] 707 F.2d at 1078. Ac-cording to the court, "The requirement of 'concert' denies protection to activity that, even if taken in support of goals that would meet the test of 'mutual aid or pro-tection,' is only the isolated conduct of a single employee." *Id.*

Defendants' evidence does not indicate that Ms. Saquin wrote her letter as part of an effort by an organized group of Haley employees. Instead, the evidence that they offer favors a conclusion that Ms. Saquin acted on her own.

Under the balancing test proper in light of *E.I. du Pont de Nemours,* the Court finds that Ms. Saquin's state law claims are not preempted by the NLRA. Accordingly, the action must be remanded.

---

1. Applying this standard, the Ninth Circuit held in one case that an employee's filing of a com-plaint about carbon monoxide fumes in the workplace was not concerted activity, even though other employees had also complained and the complaint was designed to remedy a danger faced by several employees. The key fact to the court was that the employee had acted alone. *NLRB v. Bighorn Beverage,* 614 F.2d 1238, 1242 (9th Cir.1980).

**ORDER**

In accord with the above memorandum of decision,

IT IS HEREBY ORDERED that the Court's January 15, 1987 Order of Remand is affirmed on the merits.

In a Second Circuit case, the court of appeals held that that an employee who walked off her job after her employer failed to respond to her and a coemployee's grievance was not protected by the NLRA because the action was not con-certed. *Ontario Knife Co. v. NLRB,* 637 F.2d 840, 843–44 (2d Cir.1980). The Ninth Circuit approved of this result in *E.I. du Pont de Nem-ours,* 707 F.2d at 1078.